UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | | |
|---|---|---|
| GREGORY T. HENSELER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 18-cv-1363 |
| | ) | |
| COOK CANTON, LLC, an Indiana limited liability company, | ) | **JURY DEMAND** |
| | ) | |
| Defendant. | ) | |

## **COMPLAINT AND JURY DEMAND**

NOW COMES, Plaintiff, GREGORY T. HENSELER, by and through his attorney, CURTIS S. LANE of BARNHART, TINSMAN & LANE, LTD., and complaining of Defendant, COOK MEDICAL LLC, an Indiana LLC, states as follows:

### I.
### JURISDICTION & VENUE

1. Jurisdiction to hear Plaintiff's claims under the Civil Rights Act of 1964, 42 U.S.C. §2000e-2, is founded under 28 U.S.C. §1343(4).

2. Plaintiff is a resident of Canton, Illinois, Fulton County, Illinois and was employed at Defendant's Canton, Illinois plant located at 300 E. Elm St, Canton, Fulton County, Illinois.

3. Defendant, Cook Canton, LLC, is an Indiana LLC registered as a foreign LLC in the State of Illinois doing business in Canton, Illinois, and the claim arose in Fulton County, Illinois.

4. Venue in this Court is proper under 28 U.S.C. §1391(b). This case is assigned to the Peoria Division of this Court under Local Rule 40.1.

5. The occurrence complained of occurred on or about March 28, 2017, in the City of Canton, County of Fulton, and State of Illinois.

## II.
## THE PARTIES

6. Plaintiff, Gregory T. Henseler, is a 55-year-old male who was employed for nearly seven (7) years as an hourly employee/hubber, assembler and supervisor in the hubbing department at the Cook Canton LLC plant located at 300 E Elm St, Canton, Fulton County, Illinois.

7. Defendant, Cook Canton LLC, is an Indiana LLC corporation registered as a foreign LLC in the State of Illinois doing business at 300 E Elm St, Canton, Fulton County, Illinois.

8. Defendant manufactures certain catheters and other medical parts and supplies from its Canton, Illinois location.

9. Defendant is an employer pursuant to 42 U.S.C. §2000e(b) and Plaintiff was an employee of Defendant pursuant to 42 U.S.C. §2000e(f) at all relevant times as described below.

## III.
## GENERAL ALLEGATIONS

10. Plaintiff was hired by Defendant at its Canton plant and commenced employment on August 2, 2010 as an assembler for catheter parts.

11. That in early 2012, Plaintiff undertook the job duties of a hubber in a new department.

12. That in approximately October of 2012 Plaintiff was promoted as a supervisor in the hubbing department, which was called a "Group Leader" by Defendant at this Canton, Illinois location.

13. Plaintiff's position of assembler and hubber would be considered production related with the creation of certain catheters and other medical parts.

14. That Plaintiff, throughout his nearly seven (7) years of employment with Defendant, received multiple increases in pay due to his job performance as detailed in his Quality Assurance Forms undertaken by a supervisor of Plaintiff, which said pay increases were effective on the following dates: February 15, 2011; August 15, 2011; February 15, 2012; February 15, 2013; August 15, 2013; August 15, 2014; November 15, 2015; and August 15, 2016.

15. That Plaintiff's Quality Assurance Forms detail Plaintiff was rated on multiple occasions for a multitude of performance areas as being "Excellent" and "Exceeds Standard Ratings".

16. Plaintiff consistently out produced other individuals in producing relevant medical parts in each of the positions he held.

17. Plaintiff previously worked with a co-worker named Anthony Baptist, who was of the Catholic faith.

18. At all times relevant herein, including during the time he was employed by Defendant and currently, Plaintiff was and is of the Catholic faith.

19. That on or about February of 2011, Anthony Baptist and Plaintiff were called into Kim Lane's office, who was a supervisor at Defendant's Canton location. Shawn Lawrence, Defendant's plant manager at the Canton location, advised Plaintiff and Mr. Baptist they were not to associate with one another due to their Catholic faith and that Catholics were the plight of the company and the United States.

20. On or about April of 2011, Plaintiff and Mr. Baptist were speaking in the company breakroom and Denise Kirgan, a supervisor of Defendant, advised both Plaintiff and Mr. Baptist they were already told not to speak to one another.

21. In May of 2012, Shawn Lawrence, came out of her office to the production floor and openly made the statement "these are my two worst production workers," referring to Plaintiff and an African American female employee.

22. In June of 2015, Plaintiff worked in a supervisory capacity. He was approached to sign a same sex marriage card, which he refused to sign and explained it was his religious belief that marriage was between a man and a woman. This resulted in him being called to Shawn Lawrence's office and being advised by Shawn Lawrence that he was required to sign the card and that Plaintiff's beliefs don't count.

23. Shawn Lawrence additionally advised Plaintiff that he would no longer be a supervisor, but she would make it look as though he stepped down to a non-supervisory position. Although, Plaintiff no longer wished to be in a supervisory capacity at this point. Shawn Lawrence advised Plaintiff that if he would not accept the demotion to a non-supervisory position she would find a reason to terminate him. Shawn Lawrence also advised Plaintiff at that time that she set Plaintiff up to fail as a supervisor.

24. Plaintiff was disciplined because of the June 2015 incident.

25. Defendant provides certain gifts depending on how many years an employee has worked for the company.

26. In July of 2015, it was close to Plaintiff's five (5) year anniversary and another employee (Karen Bouc) inquired into what he would be requesting for his anniversary to which Plaintiff replied he was not into material things and his faith is what drove him.

27. This July 2015 incident resulted in Plaintiff being called to Shawn Lawrence's office and her advising Plaintiff that he was preaching God to other employees, that he was different due to his religion and he could not act that way.

28. Plaintiff was disciplined for the July 2015 incident.

29. In July or October of 2014, Plaintiff was required to obtain glycerin from an area outside of his department. He was advised by Zelda Schenck, a production supervisor, that Plaintiff did not accomplish this fast enough and was told by her "I hate f****** men" and "they are worthless".

30. In February 2017, Plaintiff was provided a reprimand for not taking a lunch however, he had not taken a lunch, yet Plaintiff had not taken a lunch for nearly three (3) years at that point.

31. Other employees, who were female, would be allowed to leave early for breaks and return late from lunch but were never reprimanded for this behavior.

32. In February of 2017, Plaintiff was reprimanded for "table hopping". Table hopping is speaking to other co-employees on the production floor outside of your break time. When Plaintiff was spoken to by Diana Taft, his hubbing supervisor, he complained that all of the female employees engaged in this behavior but were never reprimanded. Diana Taft responded to Plaintiff's complaint of different treatment by stating he would be treated differently as he is a man and he works at Cook and that is at Cook.

33. In July or August of 2015 while Plaintiff was a supervisor he was attempting to handle a matter raised by another employee when Betty Beoletto yelled across the production floor to get Plaintiff's attention. Plaintiff responded to Ms. Beoletto that he would be back to assist her when he was done with the other issue to which she replied, "Do you talk to your wife like that at home?" Plaintiff responded it was not Ms. Beoletto's business how he spoke to his wife. Plaintiff received a reprimand and was told he should have assisted Ms. Beoletto but she did not receive any reprimand for her comments to Plaintiff.

34. On March 21, 2017, Plaintiff was given another reprimand for table hopping despite the fact he was speaking to a co-worker about a catheter, which was work related. Plaintiff complained to a supervisor, Diana Taft, that females in his work area table hop but do not receive reprimands. She then told Plaintiff to sit down, shut his mouth and do his work because that is the way Cook is. The next day Plaintiff was called into Diana Taft's office and sent home due to a pending investigation of Plaintiff's behavior.

35. Plaintiff was terminated on March 28, 2017 based upon his eye contact and body language by Denise Kirgan.

## IV.
## PLAINTIFF'S CLAIMS
## STATUTORY PROVISIONS

36. At all times material there was in full force and effect in the United States of America the following provision of the Civil Rights Act of 1964, and 42 U.S.C. §2000e, which provides:

42 U.S.C.A. § 2000e-2

§ 2000e-2. Unlawful employment practices

**(a) Employer practices**

It shall be an unlawful employment practice for an employer—

**(1)** to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

**(2)** to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C.A. § 2000e-5

§ 2000e-5. Enforcement provisions

**(e) Time for filing charges; time for service of notice of charge on respondent; filing of charge by Commission with State or local agency; seniority system**

**(1)** A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

**(f) Civil action by Commission, Attorney General, or person aggrieved; preconditions; procedure; appointment of attorney; payment of fees, costs, or security; intervention; stay of Federal proceedings; action for appropriate temporary or preliminary relief pending final disposition of charge; jurisdiction and venue of United States courts; designation of judge to hear and determine case; assignment of case for hearing; expedition of case; appointment of master**

**(1)** If within thirty days after a charge is filed with the Commission or within thirty days after expiration of any period of reference under subsection (c) or (d), the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission may bring a civil action against any respondent not a government, governmental agency, or political subdivision named in the charge. In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court. The person or persons aggrieved shall have the right to intervene in a civil action brought by the Commission or the Attorney General in a case involving a government, governmental agency, or political subdivision. If a charge filed with the Commission pursuant to subsection (b) is dismissed by the Commission, or if within one hundred and eighty days from the filing of such charge or the expiration of any period of reference under subsection (c) or (d), whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a

government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge (A) by the person claiming to be aggrieved or (B) if such charge was filed by a member of the Commission, by any person whom the charge alleges was aggrieved by the alleged unlawful employment practice. Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the action without the payment of fees, costs, or security. Upon timely application, the court may, in its discretion, permit the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, to intervene in such civil action upon certification that the case is of general public importance. Upon request, the court may, in its discretion, stay further proceedings for not more than sixty days pending the termination of State or local proceedings described in subsection (c) or (d) of this section or further efforts of the Commission to obtain voluntary compliance.

37. Plaintiff was terminated based upon his sex and his religious beliefs, and his termination due to alleged eye contact and body language was merely pre-textual.

38. Plaintiff was terminated in violation of 42 U.S.C. 42 U.S.C. §2000e-2 and has suffered damages as a result thereof.

## V.
## GREGORY T. HENSELER'S SATISFACTION OF PRECONDITIONS OF SUIT

30. Defendant has the burden of pleading and providing any failure to comply with the preconditions for Plaintiff to bring an action under the Civil Rights Act of 1964.

31. Plaintiff provides the following allegations as explanatory only and does not assume the burden of proving any preconditions of bringing this action, which remains with the Defendant.

32. Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights, which was filed simultaneously with the Equal Employment Opportunity Commission

under the work sharing agreement, on August 14, 2017 asserting his claims of sex and religion discrimination against Defendant. A true and correct copy is attached as "Exhibit 1."

33. The Illinois Department of Human Rights allowed for the Equal Employment Opportunity Commission to issue and a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission on July 23, 2018. A true and correct copy is attached as "Exhibit 2."

34. This action was filed timely within ninety (90) days of receipt of the Notice of Right to Sue.

## VI.
## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, GREGORY T. HENSELER, prays for judgment in his favor in the following particulars:

    a.    Compensatory damages against Defendant in an amount exclusive of costs and interest that Plaintiff is found to be entitled;

    b.    An order enjoining/restraining Defendant from further acts of discrimination;

    c.    In the alternative, an order placing Plaintiff in the position that he would have been if no violation of his rights occurred;

    d.    An award of interest, costs and reasonable attorney's fees;

    e.    Any and all other remedies provided pursuant to the Act; and

    f.    Such other further relief as the Court deems appropriate.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

Respectfully Submitted,

GREGORY T. HENSELER, Plaintiff

By:/s/ Curtis S. Lane
Curtis S. Lane of
Barnhart, Tinsman & Lane, Ltd.

Curtis S. Lane, ARDC No. 6290002 (LEAD COUNSEL)
Christopher J. Jump, ARDC No. 6317163
Barnhart, Tinsman & Lane, Ltd.
121 W. Elm Street, P.O. Box 478
Canton, IL 61520
Telephone: (309) 647-0100
Fax: (309) 647-0492
E-mail: curtis@barnhartlaw.net
　　　　chris@barnhartlaw.net
Attorneys for Plaintiff